# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SCOTT SEDORE,

    Plaintiff,                                    Case No. 19-cv-10259

    v.                                         District Judge Matthew F. Leitman

MICHAEL WARNER,                Magistrate Judge Mona K. Majzoub

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Scott Sedore filed this *pro se* civil rights matter against Defendant Michael Warner, a corrections officer employed by the Michigan Department of Corrections ("MDOC"). (Docket no. 1.) Plaintiff alleges that Defendant violated the Eighth Amendment by denying requested medical care with deliberate indifference to his serious medical needs and seeks damages pursuant to 42 U.S.C. § 1983. (*Id.*)

Both parties have moved for summary judgment. (Docket no. 13; docket no. 18.) This action has been referred to the undersigned for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 12.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION**

The undersigned recommends that Plaintiff's motion for summary judgment (docket no. 13) be **DENIED**, that Defendant's motion for summary judgment (docket no. 18) be **DENIED**, and that the case proceed to the discovery phase.

**II.     REPORT**

    **A.     Background**

This is a civil rights action brought *pro se* under 42 U.S.C. § 1983 by Plaintiff Scott Sedore, a prisoner in the custody of the MDOC. (Docket no. 1.) Defendant Michael Warner is a corrections officer employed by the MDOC. (*Id.*)

According to medical records appended to Plaintiff's complaint, Plaintiff has been diagnosed with "bilateral pulmonary scarring" and "chronic lung disease." (*Id.* at 35–36.) To treat these conditions, prison medical officials prescribed Plaintiff an albuterol inhaler. (*Id.* at 40.) When an inhaler was nearly expired, Plaintiff would file a request for a replacement. (*Id.* at 39–41, 44–45, 49–51.) Prior to the alleged incident described in Plaintiff's complaint, prison medical officials advised him that if he needed to use an inhaler beyond the prescribed amount he should "have an officer call over to health services to get a Nursing evaluation." (*Id.* at 41.)

Plaintiff alleges that he filed two inhaler refill requests on January 4, 2018 and January 8, 2018, respectively, but had not received his replacement inhaler by January 10, 2018. (*Id.* at 49–50.) Plaintiff contends that at approximately 6:40 a.m. on January 10, he "informed [Defendant] that he had been out of his inhaler medication for several days, that as a result he was experiencing an 'emergent' health issue, *i.e.*, difficulty breathing, and he requested Defendant to contact healthcare services on his behalf by telephone." (Docket no. 13, p. 4.) Plaintiff asserts that he "stressed to [Defendant] that it felt like an elephant was sitting on [Plaintiff's] chest [and] like [he] was drowning." (Docket no. 20, p. 1.) According to Plaintiff, he repeated this request at approximately 8:30 a.m. on January 10, but Defendant did not contact healthcare. (Docket no. 13, p. 4.) Plaintiff alleges that he continued to experience pain until, at approximately 3:00 p.m., he went to the medication line and obtained a replacement inhaler from the "clinic stock." (Docket

Case 4:19-cv-10259-MFL-DRG   ECF No. 22, PageID.214   Filed 09/27/19   Page 3 of 10

no. 1, p. 22.) Plaintiff asserts that he risked disciplinary action by going to the medication window without a pass. (*Id.*)

The Court received Plaintiff's complaint on January 25, 2019. (Docket no. 1.) On March 12, 2019 the case was stayed so that the parties could participate in the *Pro Se* Prisoner Early Mediation Program. (Docket no. 7.) The stay was lifted on May 22, 2019, and on July 8, 2019 Plaintiff filed a motion for summary judgment. (Docket no. 13.) On August 6, 2019, Defendant filed a motion for summary judgment. (Docket no. 18.) On August 15, 2019, Plaintiff filed a response to Defendant's motion for summary judgment. (Docket no. 20.) Although both parties have moved for summary judgment, discovery in this case has not commenced.

    **B.**    **Standard of Review**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C.   Analysis

Plaintiff alleges that Defendant acted with deliberate indifference by refusing to contact the prison's health department when Plaintiff stated that he was having chest pain and difficulty breathing. Defendant asserts that he did not perceive any signs of a serious medical issue and thus did not violate the Eighth Amendment.

The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. "[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). An Eighth Amendment claim on these grounds is comprised of an objective and a subjective component. *Clark–Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006).

The objective component requires the plaintiff to show that the medical need at issue is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or

4

one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)); *see also Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct.1, 1985)).

The subjective component requires a showing that the "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Express intent to inflict unnecessary pain is not required, but "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1976); *Farmer*, 511 U.S. at 838).

Defendant concedes that an asthma attack can satisfy the objective component, but he contends that Plaintiff's symptoms in this case fail to meet that standard. (Docket no. 18, p. 11.) *See Harrison v. Ash*, 539 F.3d 510, 518–19 (observing that "the symptoms associated with an asthma attack—wheezing, difficulty breathing, tightness in the chest—are quite obvious and recognizable even to a lay person"). In support, Defendant testifies that he "do[es] not recall [Plaintiff] saying that it felt like an 'elephant' was on his chest or that he was 'drowning.'" (Docket no. 18-2, p. 2.) However, Plaintiff testifies that he made those statements. (Docket no. 1, pp. 21–22; docket no. 20, p. 1.) At this stage of the case, the Court should not decide which party's testimony is credible. *See Matsushita*, 475 U.S. at 587.

Defendant acknowledges that if he had heard Plaintiff make those statements, he "immediately would have contacted healthcare." (Docket no. 18-2, pp. 2–3.) Accordingly, a

5

reasonable trier of fact could find that Plaintiff complained to Defendant of an objectively serious medical issue.

The analysis on the subjective component is similar. If a jury determined that Plaintiff told Defendant that he needed a new inhaler because it felt like an elephant was sitting on his chest and felt like he was drowning, those statements could serve as circumstantial evidence that Defendant "drew the inference" of a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) ("A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' . . . And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.") (citing *Farmer*, 511 U.S. at 842–43).

Defendant raises several factors that seem to discredit Plaintiff's case. For example, the record contains no documentation of adverse physical consequences arising from the January 10 incident. But, as Plaintiff explains, he was not permitted to see a doctor on January 10, thus depriving him of the opportunity to document his symptoms. Defendant also asserts that Plaintiff did not "exhibit[] any signs of an urgent medical need" when he asked Defendant to contact healthcare. (Docket no. 18-2, pp. 2–3.) But Plaintiff contends that discovery, including surveillance footage, may lend additional support to his case. (Docket no. 20, p. 3.) Based on the record before the Court, these factors would not preclude a reasonable juror from finding Plaintiff's testimony credible.

Finally, Defendant asserts that Plaintiff's claim is barred by the doctrine of qualified immunity. (Docket no. 18, pp. 16–18.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. The qualified-immunity analysis comprises two separate but related inquiries: "(1) taken in the light most favorable to the party asserting the injury, do the facts . . . show the officer's conduct violated a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (brackets and internal quotation marks omitted).

As set forth above, the record before the Court, if construed in a light most favorable to Plaintiff, would show that Defendant violated the Eighth Amendment.

Regarding the second component, "clearly established law" is not defined "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), but "must be 'particularized' to the facts of the case," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can meet his burden under this prong by presenting caselaw "with a fact pattern similar enough to have given 'fair and clear warning to officers' about what the law requires." *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018). That case "need not be on all fours" with the instant fact pattern to form the basis of a clearly established right. *Id*. (quoting

*Burgess v. Fischer*, 735 F.3d 462, 474 (6th Cir. 2013)). But the question must be so settled that "every reasonable official would have understood that what he is doing violates [the] right" at issue. *al-Kidd*, 563 U.S. at 741 (internal quotation marks omitted). And "an action's unlawfulness can be 'clearly established' from direct holdings, from specific examples describing certain conduct as prohibited, or from the general reasoning that a court employs." *Baynes v. Cleland*, 799 F.3d 600, 612 (6th Cir. 2015). To determine whether the law is clearly established "we must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)).

As a general matter, the Supreme Court and the Sixth Circuit have long upheld the right of prisoners to be free from prison officials' deliberate indifference to serious medical needs. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). But more specifically, at the time of the alleged incident, a reasonable person in Defendant's position would have been on notice that denying medical care to an inmate who is experiencing chest pain and breathing problems violates the Eighth Amendment. *See Harrison v. Ash*, 539 F.3d 510, 518–19 (6th Cir. 2008); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311–12 (6th Cir. 2005); *Comstock v. McCrary*, 273 F.3d 693, 701 (6th Cir. 2001).

### C. Conclusion

For the reasons stated herein, the undersigned recommends that Plaintiff's motion for summary judgment (docket no. 13) be **DENIED**, that Defendant's motion for summary judgment (docket no. 18) be **DENIED**, and that the case proceed to the discovery phase.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: September 27, 2019         s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: September 27, 2019        s/ Leanne Hosking
                                         Case Manager